**Donald F. PETTY, et al., Respondents,**

v.

**ALLSTATE INSURANCE COMPANY, Appellant.**

**No. 50207.**

Supreme Court of Minnesota.

March 14, 1980.

Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan and James F. Roegge and Kenneth W. Dodge, Minneapolis, for appellant.

James R. Schwebel and Diane C. Hanson, Minneapolis, for respondents.

Heard before OTIS, TODD, and SCOTT, JJ., and considered and decided by the court en banc.

TODD, Justice.

Donald and Betty Petty, residents of California, were injured in an automobile accident. They owned two vehicles registered and insured in California, a state which does not provide no-fault insurance. Even though Donald was driving his daughter's car in Minnesota at the time of the accident, his policy was applicable because of the priority provisions of Minnesota's no-fault statute. Pursuant to its interpretation of applicable Minnesota statutes, Allstate paid $10,000 basic economic benefits to Donald, but declined to pay any additional amount which would have been required if the vehicles had been insured in Minnesota. The trial court permitted Donald to stack his two insurance policies in order to collect benefits in excess of $10,000. We affirm.

The facts in this case are not in dispute. Donald and Betty Petty were residents of California, a state which does not provide for no-fault insurance benefits. They were the owners of two vehicles, a 1973 Oldsmobile sedan and a 1971 GMC truck, both of which were garaged, registered, and licensed in California. Both vehicles were insured by defendant, Allstate Insurance Company, under a policy written and issued in California in compliance with the laws of the State of California. At the time of the accident, however, the Pettys had driven their Oldsmobile to Minnesota to attend the funeral of Mrs. Petty's father and to visit their daughter.

On June 28, 1975, Donald Petty was driving an automobile owned by his daughter,

in which Betty Petty was a passenger, when it was involved in a collision with another vehicle in Stearns County, Minnesota. As a result of that accident, the Pettys made claim against Allstate for "no-fault" benefits because of injuries to Mr. Petty's neck and back which caused him to be unable to work for an extended period of time. Up to the present time, he has incurred wage losses in excess of $40,000.

In accordance with Minn.Stat. § 65B.50, subd. 1 (1978), Allstate acknowledged its obligation to provide nonresident policyholders with the minimum security as provided by Minn.Stat. § 65B.49 (1978). Accordingly Allstate paid the Pettys the sum of $10,000 as and for the wage loss claim of the basic economic benefits provided by the no-fault law.

The Pettys commenced this action seeking to stack no-fault benefits under both vehicles insured by the California contract of insurance even though such coverage was not available in the insurance contract. Both parties ultimately made cross motions for summary judgment. On April 3, 1979, the Hennepin County District Court issued an order denying Allstate's motion granting the Pettys' motion and ordering and declaring, in effect, that stacking of no-fault coverage would be permitted. Allstate has appealed from the judgment of the trial court.

The sole issue presented is whether nonresident owners of more than one vehicle insured in a state which does not provide no-fault benefits are entitled to stack benefits under applicable Minnesota statutes.

Minnesota requires residents to carry no-fault insurance. In interpreting our statute, we have held that Minnesota residents are entitled to stack benefits where they own more than one vehicle on the premise that a premium is charged for such coverage on each vehicle; therefore, the insured is entitled to all the benefits he has paid for. *Wasche v. Milbank Mut. Ins. Co. and Bock v. Mutual Service Cas. Ins. Co.,* 268 N.W.2d 913 (Minn.1978).

In addressing the situation where nonresidents are operating motor vehicles within the State of Minnesota, our legislature has adopted Minn.Stat. § 65B.50, subd. 1, which provides:

Every insurer licensed to write motor vehicle accident reparation and liability insurance in this state shall, on or before January 1, 1975, or as a condition to such licensing, file with the commissioner and thereafter maintain a written certification that it will afford at least the minimum security provided by section 65B.49 to all policyholders, except that in the case of non-resident policyholders it need only certify that security is provided with respect to accident occurring in this state.

Subd. 2. Notwithstanding any contrary provision in it, every contract of liability insurance for injury, wherever issued, covering obligations arising from ownership, maintenance, or use of a motor vehicle, except a contract which provides coverage only for liability in excess of required minimum tort liability coverages, includes basic economic loss benefit coverages and residual liability coverages required by sections 65B.41 to 65B.71, while the vehicle is in this state, and qualifies as security covering the vehicle.

Allstate is licensed to do business in Minnesota.[1] Allstate asserts that under the statute it is only required to pay the minimum coverage of $10,000, and since it has paid this amount, it is unfair to require it to pay benefits not provided for under its policy which was drawn up under the laws of another state.

■ An examination of the statute precludes acceptance of Allstate's position. The statute does not refer to the agreement between the insurance company and the insured. Rather, it imposes certain conditions upon companies desiring to provide insurance coverage in Minnesota. Minn. Stat. § 65B.50, subd. 1, imposes the duty upon licensed companies to provide coverage that affords "at least the minimum

---

1. We are not confronted with the problem of a nonresident operator of a motor vehicle insured by a company not licensed to do business in Minnesota and do not pass on this issue.

security provided by section 65B.49 to all policyholders." Subdivision 1 then creates an exception to this rule for nonresident policyholders "with respect to accidents occurring in this state." For these persons, licensed companies "need only certify that security is provided." Allstate argues that the minimum coverage provision applicable to all policyholders carries over into the exception for nonresident policyholders involved in accidents while in Minnesota. We decline to read the two portions of the subdivision together, however, because they address different problems. Instead, we look to Minn.Stat. § 65B.50, subd. 2, in order to determine what "security" must be afforded to nonresident insureds operating an insured vehicle in Minnesota.[2]

█ In subd. 2, a licensed company agrees to provide "basic economic loss benefit coverages" "[n]otwithstanding any contrary provision" in the original policy so long as the insured vehicle is in Minnesota. We have already determined that basic economic loss benefit coverage permits the stacking of policies for resident insureds. See *Wasche v. Milbank Mut. Ins. Co.*, 268 N.W.2d 913 (Minn.1978). Consequently, we find that by its agreement with the state under Minn.Stat. § 65B.50, subds. 1, 2, Allstate has contracted to allow nonresident insureds operating insured vehicles in Minnesota to stack their policies regardless of contrary provisions in the policies. Thus, the Pettys may stack their policies when collecting their benefits from Allstate.

We find no merit in Allstate's claim that it is unfair to achieve such a result because no separate premiums were paid for separate compulsory no-fault coverages. This argument ignores the fact that technically no premium was charged in the insurance contract between Allstate and its insured for the minimum coverage of $10,000, which Allstate has already admitted its obligation to pay. As stated above, Allstate's obligation to allow stacking of policies in this case arises from the duties imposed upon it for

the privilege of doing business in Minnesota, not its private contract with the Pettys. We addressed the fairness of imposing different duties upon insurance companies in different states in our recent decision of *Hague v. Allstate Insurance Co.*, 289 N.W.2d 43 (Minn.1979). We there stated:

When an insurance company doing business in a number of states writes a policy on an automobile, the company knows the automobile is a movable item which will be driven from state to state. The company, therefore, accepts the risk that the insured may be subject to liability not only in the state where the policy is written, but also in states other than where the policy is written, and that in many instances those states will apply their own law to the situation.

289 N.W.2d at 50.

Affirmed.

---

2. The Pettys were operating their daughter's vehicle at the time of the accident. Under Minnesota priority, however, their daughter's vehicle became an insured vehicle under their policy. Minn.Stat. § 65B.47 (1978).