[Civ. No. 29931. Fourth Dist., Div. Two. June 22, 1984.]

CALIFORNIA CASUALTY INDEMNITY EXCHANGE,
Plaintiff and Appellant, v.
HEROLD DEARDORFF et al., Defendants and Respondents.

**COUNSEL**

Smith & Hunkins and Robert J. Smith for Plaintiff and Appellant.

Swarner, Finn & Barnett and William N. Barnett for Defendants and Respondents.

**OPINION**

**MORRIS, P. J.**—Appeal from a judgment in an action for declaratory relief brought by plaintiff.

### FACTS

 Plaintiff issued an insurance policy covering four vehicles owned by defendants Herold and Arline Deardorff on August 27, 1980, in California. The policy contained uninsured motorist coverage of $15,000 per person/$30,000 per accident, bodily injury of $100,000/$300,000, property damage of $50,000, medical of $5,000 and comprehensive collision at $100 deductible.

In July 1981, while Herold Deardorff was driving one of the covered vehicles in Burnsvale, Minnesota, it was struck head on by a Minnesota resident driving the wrong way on a one way road. As a result of the accident, Mr. Deardorff incurred medical bills of $70,000 and Mrs. Deardorff, who was a passenger in the car, incurred bills totaling $90,000. Defendants received $25,000 each from the driver of the other car and $30,000 each from plaintiff.

The Deardorffs' policy contained an out-of-state insurance provision which states:

"24. OUT-OF-STATE INSURANCE: If, under the provisions of the motor vehicle financial responsibility law or the motor vehicle compulsory insur-

ance law or any similar law of any state or province, a non-resident is required to maintain insurance with respect to the operation or use of a motor vehicle in such state or province and such insurance requirements are greater than the insurance provided by the policy, the limits of the Company's liability and the kinds of coverage afforded by the policy shall be as set forth in such law, in lieu of the insurance otherwise provided by the policy, but only to the extent required by such law and only with respect to the operation or use of a motor vehicle in such state or province; provided that the insurance under this provision shall be reduced to the extent that there is other valid and collectible insurance under this or any other motor vehicle insurance policy. In no event shall any person be entitled to receive duplicate payments for the same elements of loss."

In 1974, plaintiff signed a state of Minnesota no fault certification form which states that any liability policy issued by plaintiff "with respect to a motor vehicle as to which the owner is required to maintain security under Minnesota No-Fault Automobile Insurance Act, . . . shall be deemed to provide the security required by such Act." The act requires basic economic loss coverage of $30,000, $20,000 for medical expenses and $10,000 for nonmedical.

The Minnesota act became effective in 1975. In 1978, the Supreme Court of Minnesota interpreted the basic economic loss coverage required by the act to permit stacking of policy limits for residents. (*Wasche* v. *Milbank Mut. Ins. Co.* (Minn. 1978) 268 N.W.2d 913.) In *Petty* v. *Allstate Ins. Co.* (Minn. 1980) 290 N.W.2d 763, the court held that nonresident owners of more than one vehicle insured in a state which does not provide no fault benefits are entitled to stack benefits under Minnesota statutes when the insurer is licensed to do business in Minnesota.

Plaintiff sought declaratory relief to limit its liability to $30,000 to each defendant. The trial court allowed the defendants to stack no fault benefits allowed under each of the four vehicles insured by the policy, a total award of $180,000. Plaintiff has appealed.

DISCUSSION

Plaintiff distinguishes the *Petty* decision on the grounds that the insurance company in that case was licensed in Minnesota. The *Petty* court held that the insurance company's obligation to allow stacking arose from the duties imposed on the company for the privilege of doing business in Minnesota and not from its private contract with the insured. Although plaintiff is not licensed to do business in Minnesota, plaintiff did sign the Minnesota no

fault certification form in 1974. That document is plaintiff's agreement to ". . . provide the security required by such act. . . ." That agreement was in effect at the time plaintiff issued defendants' policy. Plaintiff's obligation to comply with Minnesota law and allow stacking of policies arises from this agreement, and from the duties imposed on it for the privilege of being allowed to provide insurance coverage in Minnesota. (See *Petty* v. *Allstate Ins. Co.*, *supra*, 290 N.W.2d at p. 766.)

Plaintiff contends that under the "government interest" approach to choice of law problems, the policy must be interpreted according to the laws of California, which prohibit stacking. Plaintiff argues that because California is the forum state, and the contract was made between California residents and a corporation doing business in California, California has an interest in enforcing the contract according to California law. (*Robert McMullan & Son, Inc.* v. *United States Fid. & Guar. Co.* (1980) 103 Cal.App.3d 198, 205 [162 Cal.Rptr. 720]; *Tholen* v. *Carney* (5th Cir. 1977) 555 F.2d 479, 481, fn. 5.) However, unlike the cases cited by plaintiff, the contract between defendants and plaintiff expressly stated, in the out-of-state provision of paragraph 24, that when driving in a state which requires a nonresident to maintain insurance, defendants would be covered to the extent required by the law of that state.

As stated above, the Minnesota act required basic economic loss coverage of $30,000. In 1979, the Minnesota Supreme Court held that the act entitled residents of Minnesota to stack benefits. In March 1980, the court held that nonresidents were also entitled to stack benefits. (*Petty* v. *Allstate Ins. Co.*, *supra*, 290 N.W.2d at p. 766.) The defendants' policy was issued in August 1980.

It is well settled that insurance policies are governed by the statutory and decisional law in force at the time the policy is issued. (*Jordan* v. *Consolidated Mut. Ins. Co.* (1976) 59 Cal.App.3d 26, 37 [130 Cal.Rptr. 446].) Therefore, plaintiff is obligated, under its agreement with the state of Minnesota and by the terms of its contract with defendants, to comply with Minnesota law as interpreted by the Minnesota court.

Plaintiff also contends that the language of the out-of-state provision expressly limits the coverage as applied to out-of-state insurance. Paragraph 24 of the policy, the out-of-state provision, states that plaintiff will provide the coverage required by the law of any state ". . . provided that the insurance under this provision shall be reduced to the extent that there is other valid and collectible insurance under this or any other motor vehicle insurance policy."

Plaintiff contends the limiting clause decreases the $30,000 as other collectible insurance is available, thus if it is determined that there is other collectible insurance from one of the other insured vehicles, that collectible $30,000 would eliminate the $30,000 on the vehicle being used by defendants. This process would be carried on until the $30,000 on the fourth vehicle was valid and collectible and would be the only $30,000 coverage available to each of the defendants.

Plaintiff argues that this is a valid "other insurance" or escape clause under California law. (See *Peerless Cas. Co.* v. *Continental Cas. Co.* (1956) 144 Cal.App.2d 617, 621 [301 P.2d 602]; *Underground Constr. Co.* v. *Pacific Indemnity Co.* (1975) 49 Cal.App.3d 62, 68 [122 Cal.Rptr. 330].) However, the cases and code sections (Ins. Code, §§ 11580.2, subdivisions (d) and (e), 11580.9) cited by plaintiff validate "other insurance" clauses in situations in which two different policies give repeated coverage or provide other sources of recovery. Such is not the case here.

Further, the language of paragraph 24 does not lend itself to such an interpretation. The insurance which was collectible as a result of the accident was the basic economic loss coverage available under the Minnesota law. That same coverage on each of the other three vehicles is not "other valid and collectible insurance" under this policy.

The policy provides coverage under uninsured motorist, medical, and bodily injury provisions. Paragraph 24 is designed to limit payment under more than one of those provisions when it would result in double recovery. This intent is clarified by the last sentence of paragraph 24 which states "In no event shall any person be entitled to receive duplicate payments for the same elements of loss." Thus, although as plaintiff points out, an insurance company may limit the coverage of its policy (*Coit* v. *Jefferson Standard Life Ins. Co.* (1946) 28 Cal.2d 1, 11 [168 P.2d 163, 168 A.L.R. 673]), the plain language of this policy does not support the interpretation urged upon us by plaintiff.

The judgment is affirmed.

Kaufman, J., and McDaniel, J., concurred.