**WESTERN NATIONAL MUTUAL IN-SURANCE COMPANY, Respondent,**

v.

**STATE FARM INSURANCE, Appellant.**

**No. C5–84–214.**

Court of Appeals of Minnesota.

July 31, 1984.

Barbara A. Burke, Cousineau, McGuire, Shaughnessy & Anderson, Chartered, Minneapolis, for respondent.

R.D. Blanchard, Robert E. Salmon, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, for appellant.

Heard, considered and decided by PARKER, P.J., and FORSBERG and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

Appellant State Farm Insurance Co. insured an automobile of Dorothy Archiletti, who was injured in a Minnesota car accident. The appeal is on a summary judgment requiring State Farm to pay a subrogation claim of respondent Western National Mutual Insurance Co., the insurer for the vehicle occupied by Archiletti at the time of the accident.

Because Archiletti was a Missouri resident without a car in Minnesota when the accident occurred, State Farm contends she had no right to no-fault benefits under her own insurance policy. The contention is based on interpretation of the Minnesota no-fault automobile insurance act and decisions on the constitutional requirement of due process in applying statutory obligations.

We affirm.

## FACTS

Missouri residents Dorothy Archiletti and her husband Carl flew to Minnesota for a visit, leaving their vehicles in Missouri. Appellant State Farm insures the automobiles owned by the Archilettis. The insurance policy was applied for and issued in Missouri. Missouri does not have a no-fault insurance act and the Archilettis did not pay State Farm a premium for no-fault benefits. State Farm is authorized to do business in Minnesota.

On September 30, 1980, Dorothy Archiletti sustained personal injuries in an automobile accident in Minnesota. At the time of the accident, Archiletti was a passenger in a vehicle owned by John and LaVonne Wefel. The Wefels are Minnesota residents and their car is insured by Western National. The Western policy provides basic economic loss benefits as required by the Minnesota no-fault automobile insurance act.

Western honored Archiletti's claim for Minnesota no-fault insurance benefits, including medical expenses and replacement services. The company has paid Archiletti $2,625.68 and the expenses are continuing.

Western brought an action against State Farm seeking a declaration that State Farm is the proper no-fault carrier and claiming reimbursement. State Farm denied coverage based on the fact the Archilettis had no vehicle in Minnesota when the accident occurred.

The trial court granted a motion for summary judgment in favor of Western National based on an earlier Hennepin County

District Court decision in a case involving similar facts. In the prior case the trial court ruled that an insurance company doing business in Minnesota "was obligated to provide basic economic loss benefits to its nonresident insured for injuries resulting from a Minnesota accident regardless of whether or not the insured vehicle was present in the state," under Minn.Stat. § 65B.50(1) (1982) of the Minnesota no-fault automobile insurance act.

## ISSUES

1. Does the Minnesota no-fault act obligate a licensed insurer to provide benefits on a Minnesota accident even though the insured is a nonresident and her vehicle is not in Minnesota at the time of the accident?

2. Does imposition of the obligation offend due process requirements of the Federal Constitution?

## ANALYSIS

### 1.

■ Western's claim is founded on the demand of Minn.Stat. § 65B.47(4)(a) (1982) for the prior application of basic economic loss benefits from the policy "under which the insured person is an insured." Western claims subrogation rights based on the priority of any coverage applicable for Dorothy Archiletti under her State Farm policy.

To decide whether State Farm coverage applies we must interpret the language of Minn.Stat. § 65B.50 (1982). The statute provides:

Subdivision 1. Every insurer licensed to write motor vehicle accident reparation and liability insurance in this state shall, on or before January 1, 1975, or as a condition to such licensing, file with the commissioner and thereafter maintain a written certification that it will afford at least the minimum security provided by section 65B.49 to all policyholders, except that in the case of non-resident policyholders it need only certify that security

is provided with respect to accidents occurring in this state.

Subd. 2. Notwithstanding any contrary provision in it, every contract of liability insurance for injury, wherever issued, covering obligations arising from ownership, maintenance, or use of a motor vehicle, except a contract which provides coverage only for liability in excess of required minimum tort liability coverages, includes basic economic loss benefit coverages and residual liability coverages required by sections 65B.41 to 65B.71, while the vehicle is in this state, and qualifies as security covering the vehicle.

Construction of the statute is limited by the Minnesota Supreme Court decision in *Petty v. Allstate Insurance Company*, 290 N.W.2d 763 (Minn.1980). Both State Farm and Western rely on the *Petty* decision to support their positions on whether an owned vehicle must be present in Minnesota for a nonresident policyholder to collect no-fault benefits from her insurance company.

In the *Petty* case, two California residents were injured in a Minnesota automobile accident. They owned two vehicles registered in California and insured by Allstate under a policy written and issued in California. California does not have no-fault insurance. At the time of the accident, the Pettys had one vehicle present in Minnesota but were driving a vehicle owned by their daughter.

Allstate Insurance Company acknowledged in the *Petty* case an obligation under § 65B.50(1) to furnish "minimum security provided by section 65B.49 (1978);" § 65B.49 describes minimum coverage demanded by the Minnesota act. *Id.* at 765. They refused, however, to stack economic loss benefits on two insured vehicles, contending their policy did not provide for stacking. Minnesota law entitles Minnesota residents to stack basic economic loss benefit coverage for more than one owned vehicle.

Under § 65B.50(2) every insurance contract "includes" basic economic loss benefit coverages "[n]otwithstanding any contrary

provision" in the policy. If applicable to the policy purchased by the Pettys, that subdivision required stacking of benefits according to Minnesota law in spite of the contract language in the insurance contract.

Section 65B.50(1) requirements bind "[e]very insurer licensed to write motor vehicle accident reparation and liability insurance in this state ..." The Supreme Court held in the *Petty* case that the requirements of § 65B.50(2) were also imposed upon the companies desiring to provide coverage in Minnesota. The court reasoned that subdivision 1 separately addressed the "security" required for nonresident policyholders, and that the court needed to "look to" subdivision 2 to identify the required "security." *Id.* at 766.

In the case at hand the parties dispute the meaning and effect of the clause in subdivision 2 which says the coverage requirements exist "while the vehicle is in this state." Because the *Petty* decision says subdivision 2 defines State Farm's coverage burden toward non-Minnesotans injured here, the company contends its burden is confined by the subdivision to accidents occurring when a nonresident has an owned car present in Minnesota. We disagree, concluding that such a requirement is not established by subdivision 2 or the *Petty* decision.

Section 65B.50(1) announces a security requirement for nonresidents which has an aim to protect nonresidents injured in "accidents occurring in this state." The policy concern of the Minnesota Legislature is clear. We find nothing in the *Petty* decision to suggest that a definition of "security" has been formulated to limit rather than to fulfill this purpose.

The Pettys had a car in Minnesota but drove another car when involved in an accident. The Supreme Court opinion does not suggest the presence of their car in the state was significant. We see no rational tie between the coverage demanded by the case and the presence of the Petty car in the state, nor can we conceive of a ration-ale for another rule in a case where the family car is not in the state.

In addition to these general observations, our opinion is forged by the view of the Supreme Court on the language of § 65B.50(2).

In the *Petty* opinion the Supreme Court referred to the words of § 65B.50(2) on a vehicle in Minnesota. Analyzing the subdivision, the court said coverage is mandated regardless of policy language "so long as the insured vehicle is in Minnesota." Reference to an "insured vehicle" represents interpretation by the court of the word "vehicle" used in the statutory clause referring to a car in the state. The "insured vehicle" for the Pettys was said by the court to be one they "were operating," a Minnesota based vehicle owned by their daughter. 290 N.W.2d at 766. The court's explanation is important.

Prior coverage for basic economic loss benefits, the subject of this case and the *Petty* case, is under a policy insuring the person. Minn.Stat. § 65B.47(4)(a) (1982). Therefore, the Supreme Court observed:

> The Pettys were operating their daughter's vehicle at the time of the accident. Under Minnesota priority, however, *their daughter's vehicle became an insured vehicle under their policy.* Minn.Stat. § 65B.47 (1978). (emphasis added)

*Id.,* at 766 n. 2.

The Pettys were "operating" a Minnesota car. Dorothy Archiletti was a passenger in a Minnesota car. The *Petty* decision establishes that Dorothy Archiletti was a passenger in an insured vehicle under her policy, and that the insured vehicle was in Minnesota when an accident occurred.

Appellant notes that Western National has charged a premium for no-fault coverage and State Farm has not. In the *Petty* decision the Supreme Court responded to this claim of an "unfair" result. The court said:

> Allstate's obligation to allow stacking of policies in this case arises from the duties imposed upon it for the privilege

of doing business in Minnesota, not its private contract with the Pettys.

*Id.* at 766.

State Farm supports its position with references to the Uniform Motor Vehicle Accident Reparation Act corresponding to Minn.Stat. § 65B.50 and the related comments of the Commissioners. Due to our study and application of a decisive holding of the Minnesota Supreme Court, these authorities are not persuasive. Further, it is vital to note the contrasts between the uniform act and the clear regard of the Minnesota Legislature in § 65B.50(1) for accidents occurring in this state.[1]

State Farm also contends its obligations are limited due to the language of Minn. Stat. § 65B.48(1) (1982). That section only requires that non-residents maintain insurance demanded by Minnesota law for the period their vehicle is maintained or used here. This argument conflicts with the statutory scheme. The obligations of an owner under Minn.Stat. § 65B.48(1) are separate from the obligations of a licensed insurer under Minn.Stat. § 65B.50. Nothing in the latter section calls for consideration of the owner's obligations to provide coverage.

### 2.

■ We conclude this construction and application of § 65B.50 is within the constitutional demand for due process. The constitutional issue is resolved by examining the contacts of Minnesota with the parties and the occurrence involved in the dispute. *Allstate Ins. Co. v. Hague,* 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981). The United States Supreme Court said in that case:

> [F]or a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation

of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair.

*Id.* at 312–313, 101 S.Ct. at 639–640. Application of Minnesota law depends on whether these contacts are "sufficient" or "too slight and casual." *Hime v. State Farm,* 284 N.W.2d 829 (Minn.1979).

■ State Farm asserts the case involves more than a choice of law discussed in the preceding cases. Whether the issue is viewed as one of choice of law or extraterritorial effect of statutes, the test in determining whether state law governs an insurance contract formed elsewhere remains the same, a measure of the significance of contacts in the state. *See Clay v. Sun Insurance Office, Ltd.,* 377 U.S. 179, 181–182, 84 S.Ct. 1197, 1198, 12 L.Ed.2d 229 (1964).

In *Hime v. State Farm, Id.,* State Farm issued an automobile insurance policy to a Florida resident for a car that was principally garaged in Florida. The policy contained an exclusion for bodily injury to family members. Mrs. Hime was seriously injured as a result of an accident in Minnesota between cars driven by her husband and a Minnesota resident. She commenced suit against both drivers in a Minnesota court. State Farm refused to defend or indemnify Mr. Hime due to the intra-family liability exclusion. Minnesota law renders such clauses invalid and the question before the Minnesota Supreme Court was whether our law could be applied.

The court held that due process would allow application of Minnesota law and stated that the contacts in the *Hime* case result both from the insurance contract and the tort:

> We do not restrict our review to the contacts arising from the contract. To

---

**1.** Commentators differ on Minnesota law considered in this case. Support for the conclusion we reach is found in James R. Schwebel and Diana C. Hanson, *Practitioner's Guide to Minnesota No-Fault Act* (2d ed. 1983), at 47, where it was observed:

> [N]on-residents who are involved in accidents in Minnesota are entitled to recover full no-

fault benefits in accordance with the statutory law and case law of this state as long as the insurance company is licensed to do business in Minnesota. Our Court will rewrite insurance policies to conform to the Minnesota No-Fault Act when non-residents are injured within this state.

do so would be to ignore the unique nature of automobile liability insurance.... Moreover, the automobile liability insurance contract contemplates the occurrence of a tort. The transaction is a hybrid, overlapping the laws of tort and contract. *See, Allstate Insurance Co. v. Sullam*, 76 Misc.2d 87, 349 N.Y. S.2d 550, 558 (1973).

*Id.* at 832. Even though the contract was issued in Florida on a vehicle garaged in that state the court concluded that the Minnesota contacts were sufficient. These contacts were: State Farm is licensed to do business in Minnesota and is subject to suit here; the accident occurred here and involved Minnesota residents and a Minnesota vehicle. The nonresident was injured and treated in a Minnesota hospital; and the suit was tried in Minnesota. In the *Hime* case the nonresident vehicle was present, but in that case and in the case at hand the contract was issued in another state.

Here the accident occurred in Minnesota and involved Minnesota residents. Minnesota has a significant interest in providing like benefits for all victims of accidents in the state. State Farm is licensed to do business in Minnesota. Minnesota has a significant interest in ensuring consistent application of coverage priorities among all licensed companies. While no Missouri vehicle was present in this state, insurance companies must expect their insureds to travel into no-fault insurance states such as Minnesota.

Contacts in Minnesota are more than casual and the application of Minnesota statutory law is not fundamentally unfair.

## DECISION

The trial court did not err in deciding Minnesota statutes require State Farm to provide basic economic loss benefits to a nonresident policyholder injured in a Minnesota accident.

Affirmed.

FORSBERG, Judge, dissenting.

I respectfully dissent. In this case no vehicle owned by the insured ever entered the state of Minnesota. Because of that fact I submit that the plain language of 65B.50 subd. 2 excludes coverage. It provides:

"Notwithstanding any contrary provision in it, every contract of liability insurance for injury, wherever issued, covering obligations arising from ownership, maintenance, or use of a motor vehicle, except a contract which provides coverage only for liability in excess of required minimum tort liability coverages, includes basic economic loss benefit coverages and residual liability coverages required by Section 65B.41 to 65B.71, *while the vehicle is in this state*, and qualifies as security covering the vehicle." (Emphasis supplied).

Moreover, in *Petty v. Allstate Insurance Co.*, 290 N.W.2d 763, 766 (1980) the court said:

In subd. 2 (65B.50), a licensed company agrees to provide "basic economic loss benefit coverages" "[n]otwithstanding any contrary provision" in the original policy so long as the *insured vehicle is in Minnesota.*

(Emphasis supplied.) Again, the court in *Petty* says, quoting *Hague v. Allstate Insurance Co.*, 289 N.W.2d 43 (Minn.1979):

When an insurance company doing business in a number of states writes a policy on an automobile, the company knows the *automobile is a movable item* which will be driven from state to state. The company, therefore, accepts the risk that the insured may be subject to liability not only in the state where the policy is written, but also in states other than where the policy is written, and that in many instances those states will apply their own law to the situation.

(Emphasis supplied.) The pivotal question is always "was the vehicle in the state of Minnesota." Therefore, I would reverse.