461 So.2d 172 (1984)
Kirk EPPERSON, Appellant,
v.
DIXIE INSURANCE CO., a Foreign Corporation Doing Business in Florida, Appellee.
No. AY-368.
District Court of Appeal of Florida, First District.
December 10, 1984.
Rehearing Denied January 11, 1985.
*173 Paul D. Srygley, Tallahassee, for appellant.
Robert C. Crabtree, of Fuller & Johnson, Tallahassee, for appellee.
ZEHMER, Judge.
This case arises under the Florida Motor Vehicle No-Fault Law[1] and involves a question of substantial importance to automobile liability insurers and nonresident owners of automobiles frequently driven into Florida. The specific question presented is whether a Georgia resident injured in an insured Florida motor vehicle is barred from recovering PIP benefits under section 627.736, Florida Statutes, from the Florida owner's insurer because the Georgia resident owns an uninsured motor vehicle which is registered, licensed, and garaged in Georgia but driven to work in Florida approximately four or five days each week, so that the uninsured vehicle is present in Florida more than 90 of the preceding 365 days. The trial court found that appellant was so barred and entered summary judgment for appellee. We affirm.
On January 21, 1982, appellant, Epperson, was injured in a motor vehicle accident while a passenger in an automobile owned and operated by David Rudd and insured by appellee, Dixie Insurance Company. Epperson sustained severe injuries that resulted in hospitalization and substantial medical expenses, and he made a claim for personal injury protection benefits against Dixie. On the date of the accident, Epperson resided in Bainbridge, Georgia, and owned a 1978 Ford pickup truck registered and garaged in Georgia, but he did not have any automobile liability insurance covering that truck or himself. Although Epperson usually kept the truck at his home in Georgia, for slightly more than a year prior to the accident he drove it to work in *174 Tallahassee four or five days a week. Epperson's pickup truck was parked in Florida when the accident took place.
Personal injury protection benefits, as provided for in section 627.736, Florida Statutes (1981), are designed to reimburse persons injured in motor vehicle accidents for medical expenses and lost earnings, regardless of fault. In exchange, the owner or operator of a motor vehicle having such coverage is exempted from tort liability (except in certain limited circumstances). § 627.737, Fla. Stat. (1981). In general, Florida requires persons owning a motor vehicle regularly operated in Florida to carry automobile liability insurance sufficient to provide the security specified in section 627.733. All insurance policies issued for vehicles required to have security under that section must provide PIP benefits. § 627.736(1), Fla. Stat. (1981). Ordinarily, when a person is injured in a motor vehicle accident in Florida, he or she is entitled to PIP benefits from his or her own motor vehicle insurance carrier. § 627.736(1) and (4)(d), Fla. Stat. (1981). A passenger injured while riding in another's vehicle may not recover PIP benefits from the insurer of that vehicle if the passenger also owns a vehicle which is required to be insured by the Florida statute. § 627.736(4)(d)4 a and b, Fla. Stat. (1981). The passenger is deemed to be self-insured and personally liable for PIP benefits. § 627.733(4), Fla. Stat. (1981).
Applying the foregoing statutory provisions, Florida courts have held that a Texas resident injured while a passenger in a vehicle owned and driven by a Florida resident is entitled to recover PIP benefits from the owner's Florida insurer since the Texas resident was not the owner of a vehicle for which insurance was required under the Florida No-Fault Insurance Law. Security Insurance Co. v. Howgate, 343 So.2d 641 (Fla. 3d DCA 1977). On the other hand, it has been held that a person injured while a passenger in or the driver of an automobile insured under the Florida No-Fault Insurance Law is barred from recovering PIP benefits if he or she is the owner of an uninsured motor vehicle required to be insured by the no-fault law. Industrial Fire & Casualty Insurance Co. v. Augustin, 412 So.2d 418 (Fla. 3d DCA 1982); Tapscott v. State Farm Mutual Automobile Insurance Co., 330 So.2d 475 (Fla. 1st DCA 1976); Staley v. Florida Farm Bureau Mutual Insurance Co., 328 So.2d 241 (Fla. 1st DCA 1976).
Section 627.733(2) reads as follows:
Every nonresident owner or registrant of a motor vehicle which, whether operated or not, has been physically present within this state for more than 90 days during the preceding 365 days shall thereafter maintain security as defined by subsection (3) in effect continuously throughout the period such motor vehicle remains within this state.
Appellant argues that section 627.733(2) should be construed to mean that the vehicle must be physically present continuously for 90 days in the preceding 365 days; and since Epperson only drove his vehicle to and from Florida each day, it was not continuously within the state, and therefore he was not required to have the insurance under the Florida statute. Such construction of the statute, however, would render completely superfluous the language "during the preceding 365 days" because any continuous 90-day period would be sufficient, per se, regardless of the vehicle's presence during any preceding time period. As we construe the statute, if a nonresident operates his motor vehicle in and out of the state of Florida on a daily or weekly basis, and the vehicle is physically present on a cumulative basis within Florida more than 90 days during any preceding 365-day period, such vehicle is deemed to be present within Florida for a sufficient period of time to subject its owner to the security requirements of section 627.733. Accordingly, the court below did not err in the construction and application of the statute.
*175 Dixie contends, alternatively, that Epperson was required by section 320.38(1),[2] to register and license his pickup truck in Florida within ten days after he had begun work here and that Epperson was, therefore, required by section 627.733(1)[3] to obtain no-fault insurance, including PIP coverage, regardless of the application of section 627.733(2). Since Epperson failed to have the required insurance, Dixie argues, he is precluded from recovering PIP benefits from Dixie.
Epperson responds to this argument by citing section 320.39, Florida Statutes (1981),[4] which authorizes reciprocal agreements for nonresident exemption from the provisions of section 320.38. Epperson appended to his reply brief a copy of a purported motor vehicle reciprocity agreement entered into by the state of Florida and the state of Georgia pursuant to this statute. In that document, the states purport to agree that:
[M]otor vehicles which are properly and currently registered and licensed in one of said States, and which commute daily or substantially daily from such State to the other State and return to the State of origin in the normal course of their operations where such vehicles are used by the operators to go to and from work shall be permitted to operate in said other State without the payment of any fees for motor vehicle license plates.
Accordingly, Epperson argues, he is exempt from registering his pickup truck in the state of Florida and should not be required to obtain Florida insurance on that vehicle.
By separate order, we have, at Dixie's request, stricken the reciprocal agreement referred to above because it was not presented to the trial court below. We note, however, that Dixie's motion for summary judgment did not specify, as one of the grounds supporting relief, Epperson's failure to register the pickup truck in Florida pursuant to section 320.38. Therefore, Epperson was not called upon to respond to that contention in the trial court. Since Dixie's motion for summary judgment failed to comply with rule 1.510(c), Florida Rules of Civil Procedure (requiring that the motion "shall state with particularity the grounds upon which it is based and the *176 substantial matters of law to be argued"), this argument by Dixie was not properly before the trial court and, thus, is not properly before us on this appeal.
Epperson argues, finally, that the trial court's decision should be reversed because it imposes an inequitable and harsh result. No doubt this case further illustrates the sometimes illogical results required by the literal interpretation and application of the Florida Motor Vehicle No-Fault Law. But we are not at liberty to alter the plain meaning of statutory language merely to avoid hardships and inequitable results.
Our discussion of Dixie's alternative argument illustrates an apparent anomaly in the Florida statutory scheme: Nonresidents who travel frequently from adjoining states into Florida to work or otherwise conduct their daily affairs may well be exempt from obtaining Florida registration and licensing of their vehicles pursuant to a reciprocal agreement made in accordance with section 320.39; but these same non-residents are not necessarily exempt from insuring these vehicles for the liability and PIP insurance coverage required by the Florida Motor Vehicle No-Fault Law. Whether this anomaly is inadvertent or intentional, we cannot say, and point it out for the purpose of consideration and clarification by legislative action.
Having concluded upon our interpretation of the plain meaning of the applicable statutes that appellant was required to obtain insurance in accordance with the Florida Motor Vehicle No-Fault Law, and was self-insured for PIP benefits because he failed to do so, the summary judgment for appellee is AFFIRMED.
SMITH and BARFIELD, JJ., concur.
NOTES
[1] Section 627.730, et seq., Florida Statutes (1983). This act was formerly known as the "Florida Automobile Reparations Reform Act." § 627.730, Fla. Stat. (1981).
[2] Section 320.38(1), Florida Statutes (1981), reads as follows:

The provisions of law authorizing the operation of motor vehicles over the highways of the state by nonresidents of this state, when such vehicles are duly registered or licensed under the laws of some other state or foreign country, shall not apply to any nonresident who accepts employment, or engages in any trade, profession, or occupation in this state, except a nonresident migrant farm worker as defined in s. 316.003(62), in every case where a nonresident, except a nonresident migrant farm worker as defined in s. 316.003(62), accepts employment or engages in any trade, profession, or occupation in the state . .. such nonresident shall within 10 days after the commencement of such employment or education be required to register his motor vehicles in this state if such motor vehicles are proposed to be operated on the highways of the state.
[3] Section 627.733(1), Florida Statutes (1981), reads:

Every owner or registrant of a motor vehicle required to be registered and licensed in this state shall maintain security as required by subsection (3) in effect continuously throughout the registration or licensing.
[4] Section 320.39, Florida Statutes (1981), provides:

(1) The Department of Highway Safety and Motor Vehicles, the Department of Transportation, and the Public Service Commission may negotiate and consummate with the proper authorities of the several states of the United States, reciprocal agreements whereby residents of such other states operating motor vehicles properly licensed and registered in their respective states may have such privileges and exemption in the operation of their said motor vehicles in this state, as residents of this state may have and enjoy in the operation of motor vehicles, duly licensed and registered in this state, in such other states. However, nothing herein shall be construed to relieve any motor vehicle owner or operator from complying with an abiding by all other applicable laws, rules, and regulations relating to safety of operation of motor vehicles and the preservation of the highways of this state. In making such reciprocal agreements, such departments and said Public Service Commission shall have due regard to the advantage and convenience of motor vehicle owners and the citizens of this state.