**Carmen K. REED, Respondent,**

v.

**CONTINENTAL WESTERN INSURANCE COMPANY, Petitioner, Appellant.**

**No. C0–84–881.**

Supreme Court of Minnesota.

Sept. 27, 1985.

Robert E. Salmon, Thomas L. Adams, Minneapolis, for appellant.

Fredric A. Bremseth, Minneapolis, for respondent.

KELLEY, Justice.

The primary issue in this case is whether a Minnesota licensed insurer of automobiles owned by nonresidents is liable under the Minnesota No-Fault Reparations Act (Minn.Stat. § 65B.47) for no-fault benefits when one of its insureds sustained personal injuries while in a Minnesota accident at a time she was operating a non-owned vehicle, and at a time one or more of the insured vehicles was not in the State of Minnesota. On motion for summary judgment, the trial judge held that it was. The Court of Appeals affirmed.[1] We reverse in part, affirm in part, and remand.

On November 25, 1981, at 2:15 p.m., Carmen Reed, a college student who resided with her parents in Chester, Iowa, sustained extensive personal injuries resulting in quadriplegia in a Minnesota accident while driving a vehicle owned by Bernie Leeder, a Wisconsin resident. The Leeder vehicle was insured by Allstate Insurance Company (Allstate).

Carmen Reed's parents, who lived only one mile from the Minnesota-Iowa border, owned three vehicles insured by Continental Western Insurance Company (Continental). Carmen was an "insured" under the definition of the policy. Iowa does not have a no-fault reparation system, and there were no no-fault riders on the policy

---

1. *Reed v. Continental Western Ins. Co.,* 356 N.W.2d 756 (Minn.App.1984).

covering the three Reed vehicles. Carmen's father was a rural mail carrier whose route brought him almost daily into Minnesota. The other members of the family using the insured vehicles traveled frequently in Minnesota. In an affidavit filed with the trial court, Carmen's father claims that at the time of the accident, he was most likely in Minnesota on his mail route. In a similar affidavit, Carmen's mother claims that at the same time she was in LeRoy, Minnesota, doing Thanksgiving shopping. The trial court, however, made no finding whether, at the time of Carmen's accident, one or more of the Reed insured vehicles was in Minnesota.

Continental, an Iowa corporation, actively conducts automobile insurance business in Minnesota and has filed its no-fault certification form with the commissioner of commerce.

Shortly after the accident Carmen Reed collected $20,000 in medical benefits from Allstate, the insurer of the Leeder vehicle. She then ultimately commenced this action against Continental claiming no-fault benefits under the policy covering her parents' three vehicles.[2]

The trial court granted Carmen Reed summary judgment in reliance on *Western National Mutual Ins. Co. v. State Farm Ins. Co.*, 353 N.W.2d 169 (Minn.App.1984) holding that Carmen was an insured at priority level 4(a) of Minn.Stat. § 65B.47 (1984) without making any fact findings with respect to whether any of the Reed vehicles were in the State of Minnesota at the time of Carmen's accident. It further found that she was entitled to no-fault ben-

efits from Continental in addition to the benefits she had previously received from Allstate. The Court of Appeals affirmed on both issues.[3]

1. We have held today in *Western National Mutual Ins. Co. v. State Farm Ins. Co.*, 374 N.W.2d 441 (Minn.1985), whether a foreign insurer, which insured vehicles owned and garaged in a state without a no-fault reparations system, licensed to write auto insurance in Minnesota, is liable for no-fault reparation benefits at priority level 4(a) of Minn.Stat. § 65B.47 depends upon whether, at the time of the accident giving rise to the claim, one or more of the nonresident vehicles was in the State of Minnesota. Both the trial court and the majority of the court of appeals panel held that physical presence of an insured automobile in the state was not relevant to Continental's obligation to furnish no-fault benefits. Accordingly, we reverse those holdings. Whether Continental is liable to pay no-fault benefits depends upon whether at the time of Carmen's accident one or more of the Reed vehicles was in this state. As indicated, the trial judge did not address this issue because he deemed it to be immaterial. However, it is now clear that if one of the Reed vehicles was in the state at the time of the accident, it would trigger Continental's liability for no-fault benefits under priority level 4(a) of section 65B.47 (1984). Since the trial court made no factual determination on this issue, we remand for findings on this issue.[4]

2. Even should it ultimately be determined on remand that Continental is

2. The Court of Appeals found that Reed originally attempted to collect $90,000 from Continental, and then only because she needed to pay medical bills did she apply to Allstate. There is little evidence in the record to support this "finding."

3. *Reed v. Continental Western Ins. Co.*, 356 N.W.2d 756 (Minn.App.1984).

4. Mr. and Mrs. Reed filed affidavits with the trial court which, if true, tended to show that two of the Reed vehicles were in Minnesota at the time of the accident. Nevertheless, no factual determination on that point was made by the trial court. On remand, the parties should

be permitted to make a record from which such a determination can be made by the court. Apparently, the affidavits were filed with the trial court the day of the hearing on the summary judgment motion and Continental had no opportunity to respond probably because the trial court was of the opinion that the affidavits were immaterial. On remand, the trial court, if it finds coverage, should determine the amount of economic loss and interest on the "overdue payments" provided for by Minn.Stat. § 65B.54, subd. 2 (1984), both fact issues not heretofore determined.

liable under priority level 4(a), Minn.Stat. § 65B.47 (1984) to pay Carmen no-fault benefits, Continental claims she is not entitled to those benefits because Carmen has accepted no-fault benefits from Allstate. It claims Reed cannot stack benefits because the applicable policies are at different priority levels—i.e., recovery under Minn.Stat. § 65B.47, subd. 4(b) against Allstate, the insurer of the involved vehicle, and level 4(a) against Continental which issued the policy under which Carmen claims coverage under the Minnesota No-Fault Act. Relying on *Wasche v. Milbank Mutual Ins. Co.*, 268 N.W.2d 913, 919 (Minn.1978), Continental claims Reed may not stack across priority levels. We find *Wasche*, however, to be inapposite. While we did state in *Wasche* that stacking at the same level was not prohibited, it should be noted that *Wasche* did not involve the issue presented here. In that case the stacking was at the same priority level.

In this case, Reed contends she has not made an election to receive medical pay at level 4(b) from Allstate, but rather that she was compelled to do so because Continental refused to pay no-fault economic loss benefits at level 4(a), and that she was desperately in need of money to pay medical bills. She claims Continental's liability has existed since the time of the accident, and that Continental denied the claim for those benefits made about one week after the accident.[5]

She notes that were this court to apply the "voluntary payment doctrine," the application would run contrary to the purpose of the No-Fault Act because it would discourage primary obligors from providing benefits in the hope that some other carrier, mistakenly or otherwise under statutory compulsion, might pay. Likewise, she argues that Continental's position runs counter to the purpose of providing prompt payment of benefits, *see* Minn.Stat. 65B.42(1) (1984), because it discourages lower priority insurers from providing benefits when a claim could be made to a "higher priority insurer." Finally, double recovery is prevented by granting subrogation rights. *See* Minn.Stat. § 65B.47, subd. 6 (1984).

The issue here is not whether Reed can stack across priorities, but rather whether Reed can recover damages in excess of Continental policy limits from Allstate. Since Reed was rendered quadriplegic, the damages would undoubtedly exceed Continental's $90,000 exposure; but if Allstate has a subrogation action, any circuity of action is directly attributable to Continental's refusal to pay. We conclude under the circumstances of this case that if Continental's policy applies that Carmen Reed is entitled to recover economic loss benefits under its policy insuring the three Reed vehicles. Accordingly, on this issue we affirm the Court of Appeals.

COYNE, J., took no part in the consideration or decision of this case.

YETKA, Justice (dissenting).

I dissent in this case for all of the reasons stated in my dissent in the case of *Western National Mutual Insurance Company v. State Farm Insurance Company*, 374 N.W.2d 441 (Minn.1985).

SCOTT, Justice (dissenting).

I join in the dissent of Justice Yetka.

---

**5.** Some support for this claim is furnished by the fact that Continental paid her $1,000 stating that was the extent of its liability under the circumstances of this case.