**WESTERN NATIONAL MUTUAL INSURANCE COMPANY, Respondent,**

v.

**STATE FARM INSURANCE COMPANY, Petitioner, Appellant.**

No. C5–84–214.

Supreme Court of Minnesota.

Sept. 27, 1985.

R.D. Blanchard, Robert E. Salmon, Minneapolis, for appellant.

Barbara Burke, Minneapolis, for respondent.

KELLEY, Justice.

Dorothy Archiletti owned an automobile(s) licensed, garaged, and insured in Missouri. State Farm Insurance Company (State Farm) insured the Archiletti vehicle(s) in Missouri, a state which does not have an automobile no-fault reparations act. State Farm was licensed to write automobile insurance policies in Minnesota, but did not collect any premiums for no-fault coverage on the Archiletti policy. On September 30, 1980, Dorothy Archiletti sustained personal injuries in a motor vehicle accident that occurred in Minnesota. At the time of the accident, she was an occupant of a motor vehicle licensed and garaged in Minnesota and insured by Western National Mutual Insurance Company (Western). Western paid Archiletti basic economic benefits pursuant to the Minnesota No-Fault Act.[1] In an attempt to recoup these payments, Western commenced this subrogation action against State Farm. Western claimed that State Farm's obligation took precedence over Western's obligation, at priority level 4(a) of Minn.Stat. § 65B.47, because State Farm was licensed to sell automobile insurance in Minnesota. The trial court agreed and granted summary judgment. The court of appeals affirmed. *Western National Mutual Insurance Co. v. State Farm Insurance*, 353 N.W.2d 169 (Minn.App.1984). We reverse.

Prior to the accident, Dorothy Archiletti traveled to Minnesota from Missouri by commercial airline and left her automobile(s) at her residence. She sustained her injuries in the Minnesota accident while riding as a passenger in a vehicle owned by John and LaVonne Wefel. The Wefels are Minnesota residents.

The trial court and a divided court of appeals held that the Minnesota No-Fault Act obligates State Farm to provide no-fault basic economic benefits to its Missouri insured. Both courts reached this conclusion, notwithstanding that: (1) the insured automobile(s) was not in Minnesota at the time of the accident; (2) Missouri, where the Archiletti vehicle(s) was garaged and insured, did not have a no-fault reparations act; and (3) Archiletti never paid a premium for no-fault benefits. Integral to both courts' reasoning was the assumption

---

1. In honoring Dorothy Archiletti's claim for Minnesota no-fault benefits, Western paid those benefits at priority level 4(b) of Minn.Stat. § 65B.47 (1984).

that *Petty v. Allstate Ins. Co.*, 290 N.W.2d 763 (Minn.1980) limited construction of Minnesota's "certification" statute, Minn. Stat. § 65B.50 (1982). *See Western National Mutual Ins. Co.*, 353 N.W.2d at 171.

Both parties, on appeal, rely on the *Petty* decision. Western contends, and a majority of the court of appeals' panel agreed, that the *Petty* decision stands for the proposition that the presence of the out-of-state insured's vehicle in the state is insignificant with respect to an out-of-state insurer's obligation. On the other hand, State Farm asserts that the *Petty* opinion's reference to the presence of the Pettys' insured vehicle was determinative.

In *Petty*, Mr. and Mrs. Petty drove one of their two automobiles from California into the State of Minnesota. *Petty*, 290 N.W.2d at 764. While in Minnesota, the two California residents were injured in an automobile accident within this state. At the time of the accident, however, the Pettys were occupants of a Minnesota vehicle owned by the Pettys' daughter. The Pettys' two automobiles were registered and garaged in California and were insured by Allstate under a policy written and issued in California. The Pettys did not pay no-fault premiums because California at that time did not have a no-fault reparations

act. Under those circumstances, we held that the Pettys could stack no-fault benefits under Minnesota law. *Id.* at 766.

Our holding that a nonresident insured could stack out-of-state coverage does not compel acceptance of either argument now before us. The sole issue presented in *Petty* was "whether nonresident owners of more than one vehicle insured in a state which does not provide no-fault benefits are entitled to stack benefits under applicable Minnesota statutes." *Id.* at 765. The initial question of Allstate's obligation to pay no-fault benefits was not there at issue. Indeed, as we stated in *Petty*, "Allstate *acknowledged* its obligation to provide nonresident policyholders with the minimum security as provided by Minn. Stat. § 65B.49 (1978) (emphasis added)." *Id.*[2] Moreover, unlike the present situation, the Pettys had driven one of their vehicles into the State of Minnesota and it was physically present in Minnesota at the time of the accident. Allstate's concession in *Petty* is irrelevant in addressing the issue in the present appeal.[3]

■ Having found that the *Petty* decision does not compel a conclusion either way, resolution of the issue in the case depends upon the interpretation of Minn. Stat. § 65B.50 (1984).[4] Western, relying

---

2. In another portion of the opinion, the court phrased this fact somewhat differently: "Pursuant to *its* interpretation of applicable Minnesota statutes, Allstate paid $10,000 basic economic benefits * * *." *Petty v. Allstate Ins. Co.*, 290 N.W.2d 763, 764, (Minn.1980) (emphasis added).

3. We noted in *Petty* that, in fact, a Petty vehicle was physically present in the state at the time of the accident giving rise to the claim. Because the Petty vehicle was physically present in the state at the time of the accident, under our construction of the Minnesota No-Fault Act (*supra*), Allstate even absent its "concession" would have been primarily liable to pay no-fault benefits.

4. **65B.50 INSURERS' CERTIFICATION OF BASIC COVERAGE.**
   Subdivision 1. Every insurer licensed to write motor vehicle accident reparation and liability insurance in this state shall, on or before January 1, 1975, or as a condition to such licensing, file with the commissioner and thereafter maintain a written certification that it will afford at least the minimum secur-

ity provided by section 65B.49 to all policyholders, except that in the case of non-resident policyholders it need only certify that security is provided with respect to accidents occurring in this state.
   Subd. 2. Notwithstanding any contrary provision in it, every contract of liability insurance for injury, wherever issued, covering obligations arising from ownership, maintenance, or use of a motor vehicle, except a contract which provides coverage only for liability in excess of required minimum tort liability coverages, includes basic economic loss benefit coverages and residual liability coverages required by sections 65B.41 to 65B.71, while the vehicle is in this state, and qualifies as security covering the vehicle.
   We further note that such a statutory interpretation is not dependent on a choice of law analysis. Whether State Farm is primarily obligated to pay benefits depends upon statutory construction.

solely on Minn.Stat. § 65B.50, Subd. 1 (1984), claims that all insurers licensed to write automobile insurance in Minnesota agree, as a condition of doing business in Minnesota, to provide no-fault benefits to out-of-state insureds involved in Minnesota accidents. It claims that subdivision 2 of the statute does not contradict its contention because subdivisions 1 and 2 deal with two distinct situations. In its view, subdivision 1 has the effect of creating a continuous implied coverage once a licensed insurer's nonresident insured comes into the State of Minnesota. It further maintains that subdivision 2 merely provides that nonlicensed insurers must provide no-fault benefits only when a vehicle it insured comes within the borders of Minnesota. While conceding that the legislature cannot govern nonresident coverage of vehicles not in Minnesota, Western argues that the required nonresident coverage is a *separate* obligation imposed, having no relevance to obligations imposed upon licensed insurers under Minn.Stat. § 65B.50, subd. 1. It attempts to buttress this argument by noting that Minn.Stat. § 65B.50 only references Minn.Stat. § 65B.49, which only deals with requirements imposed upon insurers.

On the other hand, State Farm contends that resolution of the issue depends upon a close review of several interrelated provisions in the No-Fault Act. It argues that both subdivisions of Minn.Stat. § 65B.50 support its position that the out-of-state vehicle must be in Minnesota before the out-of-state insurer is obligated to provide no-fault benefits. It contends this interpretation is reasonable because it supports the policy of the No-Fault Act. For example, in this case State Farm's insured is covered by the insurance covering the vehicle involved in the accident, Minn.Stat. § 65B.47(4)(b)—coverage for which Western collected a premium, but for which State Farm did not.[5] State Farm further notes that Minn.Stat. § 65B.50, subd. 1, references section 65B.49 with respect to the scope of benefits that must be provided

to nonresident policyholders including a provision requiring insurers to provide nonresident basic economic loss benefits. Moreover, State Farm notes that section 65B.49 provides that subdivision 1 is "subject to the provisions of section 65B.41 to 65B.71." One of those latter provisions is Minn.Stat. § 65B.48(1), the compulsory reparation security section, which plainly requires a nonresident to maintain no-fault coverage only while his vehicle is within the state. Thus, State Farm maintains that the plain language of the certification statute, and the corresponding statutes to which it refers, indicates that the legislature did not intend to require no-fault insurance on a nonresident's automobile not being used in Minnesota. Accordingly, it argues that the general rule that no-fault benefits "follow the individual" expressed in Minn.Stat. § 65B.47(4)(a) does not here apply. Rather, it claims, the applicable priority level is Minn.Stat. § 65B.47(4)(b)—the security covering the vehicle involved in the accident.

■ Our examination of the applicable sections of the No-Fault Act confirms that the statutory language does not explicitly address the issue in this case. We, therefore, proceed to ascertain the intent of the legislature by considering, *inter alia*, the consequences of a particular interpretation. *See* Minn.Stat. § 645.16(6) (1984). In doing so, we conclude the legislature did not intend the consequences that would ensue should the construction urged by Western be sustained. Western's proposed interpretation would impose on an insurer of vehicles owned and garaged by nonresidents in foreign states an unreasonable and economically heavy burden of being compelled to attempt to adjust premiums to reflect the highly unpredictable likelihood that the nonresident might be entitled to benefits under the Minnesota No-Fault Act even if they entered this state by public transportation having no nexus with the operation of the insured vehicle.

**5.** It should be noted that the issue in this case is which of these two insurers should bear the

Archiletti loss. Compensation has been paid to Archiletti. *See supra* n. 1.

■ The public policy reflected in the No-Fault Reparations Act impliedly recognizes that it is advantageous to Minnesota automobile owners to have the benefit of competition for premium costs and coverages from as broad a pool of automobile insurers as possible. To adopt Western's proposed interpretation would tend to discourage those out-of-state insurers, licensed to do business in Minnesota,, from continued licensure and certification if the number of policies written in Minnesota was small, thereby reducing the pool. This result would be antipathetic to the goals of the No-Fault Act. *See, e.g., Nationwide Ins. Co. v. Battaglia,* 410 A.2d 1017 (Del. 1980).

State Farm's construction not only furthers the overall purpose of our No-Fault Act, but is also more consistent with related no-fault provisions. Its contention is consonant with other sections of the Act, in contradistinction to Western's construction, which essentially views Minn.Stat. § 65B.50 in isolation. We find it important

and persuasive to look to related provisions in construing our No-Fault Act.[6]

■ Therefore, we conclude that physical presence of a nonresident's automobile within the state, at the time the automobile accident giving rise to the nonresident claim occurred, is a prerequisite for imposing liability on the nonresident's Minnesota licensed automobile insurer for economic loss benefits under Minn.Stat. § 65B.47. Because no automobile owned by the Archilettis was in the state at the time Mrs. Archiletti sustained her injuries, economic losses sustained by her in the accident were compensable from the insurer of the Minnesota vehicle in which she was riding. That was Western. It follows that Western's subrogation action fails.

Reversed.

COYNE, J., took no part in the consideration or decision of this case.

I dissent. I simply cannot follow the logic of the majority opinion. It attempts to justify the decision on the grounds of

6. Foreign cases are relatively unhelpful in resolving the instant issue because each state that has enacted a no-fault act has enacted very distinct versions of the Uniform Act. However, two cases merit comment. First, in *Security Insurance Co. v. Howgate,* 343 So.2d 641 (Fla. App.1977), the Florida Third District Court of Appeals was called upon to resolve a dispute involving a nonresident who was injured in Florida while riding as a passenger in a resident's motor vehicle. *Id.* at 642. That court held that since the nonresident was not an owner of a motor vehicle for which security was required under the Florida no-fault law, the insurer of the resident had primary coverage. *Id.* at 643. No mention was made as to the whereabouts of the nonresident's car. Therefore, Florida coverage turns on whether the nonresident was required to have his/her vehicle insured as required by Florida law. *Id.; See also Epperson v. Dixie Insurance Co.,* 461 So.2d 172 (Fla.App.1984). The second case which merits discussion is *California Casualty Indemnity Exchange v. Deardorff,* 157 Cal. App.3d 548, 203 Cal.Rptr. 725 (1984). In this case, an automobile insurer sought to limit its liability under an insurance policy covering four vehicles owned by its insured, after the California insureds were involved in an accident in Minnesota. Construing Minnesota law,

the court held that plaintiff was obligated, by its no-fault certification agreement with the State of Minnesota and by the terms of its contract with its insureds, to comply with Minnesota law as interpreted by this court. 203 Cal.Rptr. at 727. Therefore, "plaintiff's obligation to comply with Minnesota law and allow stacking of policies [arose] from [its] agreement and from the duties imposed on it for the privilege of being allowed to provide insurance coverage in Minnesota. (*See Petty v. Allstate Ins. Co., supra,* 290 N.W.2d at p. 766)." *Id.* This case is of little significance, however, in determining the instant issue because (1) the California insurance company was not licensed to do business in Minnesota, and (2) the California insured was driving one of the covered vehicles in Burnsville, Minnesota, when it was struck by a Minnesota resident.

Similarly, the Uniform Act is unhelpful in resolving the present dispute since it too differs from the Minnesota Act. Professor Steenson, however, argues that the Minnesota modification supports the view that the out-of-state vehicle must be within Minnesota before the out-of-state insurer is primarily liable. M. Steenson, *Minnesota No-Fault Automobile Insurance,* at 173–177. Although we find this argument well-reasoned, we do not find it necessary or essential to our determination.

our case of *Petty v. Allstate Insurance Company*, 290 N.W.2d 763 (Minn.1980). I cannot agree. It seems *Petty* is directly in point. In *Petty*, two California residents were injured in a Minnesota automobile accident. There were two vehicles registered in California and insured by Allstate, written and issued in California. One of those California vehicles was present in Minnesota, but was parked and was not in anyway involved in the collision. The insureds were driving a Minnesota vehicle owned by their daughter at the time of the injury. The majority decision appears to make a distinction between having a vehicle insured in another state in Minnesota at the time of the accident and not having a vehicle here in the state. I will present merely one example of how ridiculous that distinction is.

Appellant admits that if the claimants here had had one of their vehicles in Minnesota at the time of the accident, even though that vehicle was parked and was in no way involved in the collision, the policy on that vehicle would provide protection to Dorothy Archiletti, who sustained the personal injuries here. Let us suppose, for example, that the people she was visiting, John and LaVonne Wefel, lived near the Minnesota-Iowa border. Let us suppose that the Archilettis allowed one of the Wefels' friends to drive the Archiletti vehicle while Dorothy Archiletti was in the Wefel vehicle, as she was in this case. If one of the Wefels' friends driving the Archiletti vehicle happened to be in Minnesota at the time of the accident and the injury to Dorothy Archiletti, it is admitted that the Archiletti insurance policy written by State Farm would cover Dorothy Archiletti. Yet, if 5 minutes before that, even though the vehicle had been in Minnesota, it had crossed the line into Iowa, there'd be no such coverage.

I simply cannot understand why it makes any difference whether they should be recovering in the two instances. That is why this court has historically held that insurance follows the person, not the vehicle. Following the vehicle could lead to ridiculous results as I think the result is in this case. That is why I would affirm both the trial court and the Minnesota Court of Appeals in this case.

SCOTT, Justice (dissenting).
I agree with the dissent of Justice Yetka.