Michelle Shepard **BURGIE**, Respondent,

v.

**LEAGUE GENERAL INSURANCE COMPANY, etc., Appellant.**

No. C7–84–554.

Court of Appeals of Minnesota.

Oct. 2, 1984.

Harry L. Munger, MacDonald, Munger & Downs, Duluth, for respondent.

Robyn N. Moschet, Hanft, Fride, O'Brien & Harries, Duluth, for appellant.

Heard, considered and decided by LANS-ING, P.J., and WOZNIAK and FORS-BERG, JJ.

## OPINION

FORSBERG, Judge.

After being injured in an auto accident, Michelle Burgie sought uninsured motorist benefits from her own insurer, League General Insurance Company. League General refused her claim because, in its opinion, the vehicle that struck Burgie's car was not an uninsured vehicle. Burgie went to court to force arbitration under the insurance contract. The trial court ordered arbitration, and League General did not appeal from that order. The arbitrators determined that Burgie was not contributorily at fault and set her damages. League General then sought to vacate the arbitrators' findings, but the trial court refused. A petition for discretionary review by the Minnesota Supreme Court was denied. League General now appeals to this court. Affirmed.

## FACTS

On August 15, 1980, while driving in the City of Duluth, Michelle Burgie was struck from behind by an Oldsmobile station wagon being driven by Nancy Wellbaum. Wellbaum was employed by the United States Forest Service at a seasonal job in Isabella, Minnesota, and returned to her home state of Ohio at the conclusion of her Forest Service job.

The Oldsmobile was owned by Wellbaum's father, licensed in Ohio, and covered by an insurance policy from Globe American Casualty Company written in Ohio. The bodily injury liability coverage limits of the policy were $12,500 per person, $25,000 per accident. These limits are the minimums apparently required under Ohio law.

Globe American, the Wellbaums' insurer in Ohio, does not do business in Minnesota. The policy was written to conform to Ohio law rather than Minnesota law. The policy does contain what is commonly known as a "conformity clause":

When this policy is certified as proof of financial responsibility for the future under the provisions of the motor vehicle financial responsibility law of any state or province, such insurance as afforded by this policy for bodily injury liability or for property damage liability shall comply with the provisions of such law which shall be applicable with respect to any such liability arising out of the ownership, maintenance or use of the automobile during the policy period, to the extent of the coverage and limits of liability required by such law, but in no event in excess of the limits of liability stated in this policy. The insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph.

Burgie's automobile policy with League General contains an uninsured motorist clause with a liability limit of $25,000. There is no underinsured clause in the policy. She seeks to recover under the uninsured motorist provision of her policy.

## ISSUE

Was Wellbaum's auto an "uninsured" vehicle?

## ANALYSIS

■ Judicial review on the issue of arbitrability may be heard in proceedings to stay arbitration (Minn.Stat. § 572.09 (1982)) or in a proceeding to vacate the award on grounds that the "arbitrators exceeded their powers" (Minn.Stat. § 572.19, subd. 1(3) (1982)). *State v. Berthiaume*, 259 N.W.2d 904 (Minn.1977). League General raised the issue of arbitrability at both junctures of this litigation.

■ League General did not appeal the first order affirming arbitrability because both parties believed they first had to submit to arbitration before appealing the first order. While a second motion denying relief denied in a previous motion upon which the time for appeal has run

does not revive appealability, *Bongard v. Bongard*, 342 N.W.2d 156 (Minn.App.1983), in arbitration there are policy reasons for allowing the arbitration to proceed to conclusion before hearing an appeal on the arbitrability of the dispute. As noted by the Supreme Court of Minnesota:

> Allowing the insurance company to stay the arbitration pending the determination of whether coverage exists means that a claimant may be forced through a multiple adjudicative process often including three stages: first, a judicial hearing to determine whether the arbitration should be stayed, then a judicial resolution of whether coverage exists, and finally an arbitration to ascertain the liability of the uninsured motorist for purposes of the uninsured motorist coverage. In a context where the maximum insurance recovery is generally $10,000 [here $25,-000] for such a claim, an adjudicative process which subjects claimants to a series of two or three separate hearings is certainly suspect, and probably undesirable.

*Dunshee v. State Farm Mut. Auto. Ins. Co.*, 303 Minn. 473, 480–81, 228 N.W.2d 567, 572 (1975) (quoting Widiss, *Guide to Uninsured Motorist Coverage* § 6.23 at 208). Adding an interlocutory appeal to the process seems to run counter to the Supreme Court's intent of fostering the use of arbitration as an alternative dispute resolution technique. Therefore, even though League General did not appeal the first order ordering arbitration, its appeal on the issue of arbitrability should still be heard by this court.

■ The League General policy defined an uninsured motor vehicle as:

> a motor vehicle for which there is no bodily injury policy or liability bond available at the time of the car accident with at least the minimum limits required by the financial responsibility law of the state in which your car is principally garaged.

Since Burgie's car was licensed and principally garaged in Minnesota, the Wellbaum car, which had only half the liability coverage required in Minnesota, would be an uninsured vehicle unless the liability coverage is "written up" to the Minnesota minimums.

■ The policy's "conformity clause" does not cause the liability coverage to be written up. By its terms, the clause allows the policy to be used as proof of financial responsibility, but "in no event in excess of the limits of liability stated in this policy." The policy excludes "writing up" liability benefits to meet higher minimums of another state. This policy can be "written up" only if state law requires the policy to be "written up" in spite of the limiting language.

The Minnesota No-Fault Act requires that

> Subdivision 1. Every insurer licensed to write motor vehicle accident reparation and liability insurance in this state shall * * * file with the commissioner and thereafter maintain a written certification that it will afford at least the minimum security provided by section 65B.49 to all policyholders, except that in the case of non-resident policyholders it need only certify that security is provided with respect to accidents occurring in this state.

> Subd. 2. Notwithstanding any contrary provision in it, every contract of liability insurance for injury, wherever issued, covering obligations arising from ownership, maintenance, or use of a motor vehicle, except a contract which provides coverage only for liability in excess of required minimum tort liability coverages, includes basic economic loss benefit coverages and residual liability coverages required by sections 65B.41 to 65B.71, while the vehicle is in this state, and qualifies as security covering the vehicle.

Minn.Stat. § 65B.50 (1982). Appellant argues that because subdivision 2 states in part that "every contract of liability insurance for injury, *wherever issued*, * * * includes * * * *residual liability* coverages required by sections 65B.41 to 65B.71, while the vehicle is in this state, * * *" that a company not licensed to do business

in Minnesota nevertheless is subject to the state's statutory minimum of $25,000 liability coverage. We disagree. Minn.Stat. § 65B.50 subd. 1 and subd. 2 must be read as a whole and not treated independently of each other.

Subdivision 1 is concerned with insurer certification and requires that:

"[e]very insurer *licensed* to write motor vehicle * * * liability insurance *in this state* shall * * * file * * * a written certification that it will afford at least the minimum security provided by [the Minnesota No-Fault Act] * * * *."

(Emphasis added.) Subdivision 2 mandates such policies to include the basic coverage required by the No-Fault Act. The two provisions can be harmonized to apply the limitation to insurers licensed in Minnesota to the entire section. *See Owens v. Federated Mut. Implement and Hardware Insurance Co.*, 328 N.W.2d 162 (Minn.1983) (a statute should ordinarily be construed as a whole to harmonize its parts).

In *Petty v. Allstate Ins. Co.*, 290 N.W.2d 763 (Minn.1980), although declining to rule on this issue (*see*, footnote 1, 290 N.W.2d at 765), the Supreme Court, nevertheless, states:

In subd. 2, a *licensed* company agrees to provide "basic economic loss benefit coverages" * * * *.

*Petty*, 290 N.W.2d at 766 (emphasis added).

It is argued that a failure to require foreign nonlicensed insurers to provide the Minnesota minimum of liability coverage would leave a gap in the No-Fault Act. The Act requires every policy to include uninsured motorist coverage in this state, for protection against injury caused by the following defined vehicles:

"Uninsured motor vehicle" means any motor vehicle or motorcycle for which a plan of reparation security meeting the requirements of sections 65B.41 to 65B.71 is not in effect.

Minn.Stat. § 65B.49 subd. 4(3) (1982). This constitutes protection against offending drivers who either are driving without insurance or have policies which are not in conformance with our No-Fault Act. It is

the latter situation which presently confronts this Court.

The gap in coverage, therefore, is not within the Minnesota No-Fault Act itself, but between the minimum coverages required in other states and those required by the Act. In fact, appellant's interpretation would relegate a resident insured to a burdensome and uncertain remedy. The purpose of the No-Fault Act is intended to promote prompt and certain payment of basic coverages with a minimum of litigation.

## DECISION

Affirmed.