# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A15-1174

Founders Insurance Company,
Appellant,

vs.

James Yates,
Respondent.

**Filed February 29, 2016**
**Reversed**
**Chutich, Judge**

Ramsey County District Court
File No. 62-CV-14-8247

Erica A. Weber, Steven E. Tomsche, Tomsche Sonnesyn & Tomsche, Minneapolis, Minnesota (for appellant)

Patrick R. Gillespie, Michael P. Gillespie, Gillespie Law Offices LLP, Rogers, Minnesota (for respondent)

Considered and decided by Reilly, Presiding Judge; Worke, Judge; and Chutich, Judge.

## S Y L L A B U S

Under the Minnesota No-Fault Automobile Insurance Act, Minn. Stat. §§ 65B.41-.71 (2014), an out-of-state insurer that is not licensed to write motor-vehicle-accident reparation and liability insurance in Minnesota is not obligated to provide basic economic-loss benefits to its insured who was injured in an accident in Minnesota.

## OPINION

**CHUTICH**, Judge

Appellant Founders Insurance Company challenges the district court's confirmation of a no-fault arbitration award, contending that, because Founders is not licensed to write motor-vehicle insurance in this state, it is not obligated under Minnesota Statutes section 65B.50 to provide basic economic-loss benefits to its insured. Because we conclude that subdivision 2 of this section applies only to insurers that are, consistent with subdivision 1, licensed to write motor-vehicle insurance in Minnesota, we reverse.

## FACTS

Shortly after moving to Minnesota from Illinois in late 2013, and while driving on a snowy Minnesota highway, respondent James Yates's car collided with a car that had lost control on an exit ramp. At the time of the accident, Yates's car was insured under a Founders policy issued to him as an Illinois resident. The parties agree that Founders is an Illinois company that does not write or issue motor-vehicle insurance in Minnesota and that Yates did not notify Founders of his move to Minnesota. They further agree that Founders is licensed to write dramshop-liability insurance in this state and has done so since 2005.

After the accident, Yates sought Minnesota no-fault benefits from Founders for over $17,000 in chiropractic expenses. Yates's policy, written and issued in compliance with the laws of the State of Illinois, caps medical-payments coverage at $1,000. Basic economic-loss benefits under our no-fault act have no counterpart under Illinois law.

Founders denied the no-fault claim. Yates then filed a petition for no-fault arbitration, to which Founders objected. Founders brought a declaratory-judgment action in Minnesota district court, seeking a ruling that it has no duty to provide basic economic-loss benefits under Minnesota's no-fault act. The arbitrator then held a hearing, at which Founders reiterated its legal objection and no one testified. The case was submitted on the record, and the arbitrator awarded Yates $17,207 in chiropractic expenses, $1,004.75 in medical-travel expenses, and $916.92 in interest.

Yates moved the district court to confirm the arbitration award, and Founders moved to vacate it. After a hearing on the motions, the district court determined that Founders was licensed to write and issue motor-vehicle insurance in this state and was therefore required by Minnesota Statutes section 65B.50, subdivision 1, to provide basic economic-loss benefits to its insured. The district court denied the motion to vacate and granted the motion to confirm the arbitration award. Founders appeals.

## ISSUE

Does Minnesota Statutes section 65B.50 require an out-of-state insurer that is not licensed to write motor-vehicle-accident reparation and liability insurance in Minnesota, to provide basic economic-loss benefits to its insured who was injured in a motor-vehicle accident in Minnesota?

## ANALYSIS

"Generally, the extent of an insurer's liability is determined by its insurance contract with its insured." *Hanbury v. Am. Family Mut. Ins. Co*., 865 N.W.2d 83, 86 (Minn. App. 2015), *review denied* (Minn. Aug. 25, 2015). But if the terms of an insurance policy

3

conflict with or omit coverage required by the no-fault act, those policy terms will be held

invalid. *Kwong v. Depositors Ins. Co.*, 627 N.W.2d 52, 55 (Minn. 2001). The parties agree

that the policy as written does not provide the coverage that Yates seeks. We therefore

turn to the statutory language to determine whether the policy must be reformed.

The goal of statutory interpretation is to "ascertain and to effectuate the intention of

the legislature." *Brayton v. Pawlenty*, 781 N.W.2d 357, 363 (Minn. 2010) (quoting Minn.

Stat. § 645.16 (2008)). "If the legislature's intent is clear from the unambiguous language

of a statute, we apply the statute according to its plain meaning." *Staab v. Diocese of*

*St. Cloud*, 853 N.W.2d 713, 716–17 (Minn. 2014). But if a statute is susceptible to more

than one reasonable interpretation, the statute is ambiguous and courts may consider other

factors to ascertain the legislature's intent. *Lietz v. N. States Power Co.*, 718 N.W.2d 865,

870 (Minn. 2006). "[J]udicial construction of a statute becomes part of the statute as

though written therein." *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 836

(Minn. 2012).

Minnesota Statutes section 65B.50 provides

> Subdivision 1. **Filing**. Every insurer licensed to write motor vehicle accident reparation and liability insurance in this state shall, on or before January 1, 1975, or as a condition to such licensing, file with the commissioner and thereafter maintain a written certification that it will afford at least the minimum security provided by section 65B.49 to all policyholders, except that in the case of nonresident policyholders it need only certify that security is provided with respect to accidents occurring in this state.
>
> Subd. 2. **Contacts of liability insurance as security covering the vehicle**. Notwithstanding any contrary provision in it, *every contract of liability insurance for injury, wherever*

4

*issued,* covering obligations arising from ownership, maintenance, or use of a motor vehicle, except a contract which provides coverage only for liability in excess of required minimum tort liability coverages, *includes basic economic loss benefit coverages and residual liability coverages* required by sections 65B.41 to 65B.71, while the vehicle is in this state, and qualifies as security covering the vehicle.

(emphases added). We first consider whether Founders must provide no-fault benefits under subdivision 1.

**Minnesota Statutes Section 65B.50, Subdivision 1**

The district court concluded that Founders is licensed to write motor-vehicle-accident reparation and liability insurance in this state because it is licensed to write dramshop-liability insurance and that, under the plain language of section 65B.50, subdivision 1, it is therefore obligated to provide no-fault benefits to Yates.[1] But nothing in Minnesota's insurance regulatory statutes states that an insurer licensed to write dramshop-liability insurance is authorized to write motor-vehicle insurance on that basis. *See* Minn. Stat. § 60A.06, subd. 1 (2014).

Under Minnesota Statutes section 60A.07, subdivision 4 (2014), no insurance company shall transact the business of insurance in this state unless it holds a "license therefor" from the commissioner. *See also* Minn. Stat. § 60A.19, subd. 1(4) ("[An out-of-

---

[1] For this analysis, we need not determine whether Yates is a "nonresident policyholder" under subdivision 1 because only basic economic-loss benefits are at issue. It is settled law that an insurer that is licensed to issue motor-vehicle policies in this state must extend basic economic-loss benefits to its nonresident policyholders who are injured in accidents occurring in this state, as long as the insured vehicle is within Minnesota at the time of the accident giving rise to the claim. *See Reed v. Cont'l W. Ins. Co.*, 374 N.W.2d 436, 438 (Minn. 1985) (determining priority level of insurers under Minnesota Statutes section 65B.47 (1984), based on the security for payment of basic economic-loss benefits).

state insurer] shall . . . obtain from the commissioner a license to transact business."). And Minnesota Statutes section 60A.07, subdivision 5c (2014), provides for specific circumstances under which an insurance company may be authorized to transact business in combinations of the insurance lines defined in section 60A.06, subdivision 1.

We conclude that Founders's license to write dramshop-liability insurance in this state does not authorize Founders, without further licensing, to write motor-vehicle insurance in Minnesota. The record does not otherwise support a conclusion that Founders is licensed to write motor-vehicle insurance in Minnesota. Accordingly, section 65B.50, subdivision 1, does not obligate Founders to provide basic economic-loss benefits to Yates.

**Minnesota Statutes Section 65B.50, Subdivision 2**

The district court did not consider whether Minnesota Statutes section 65B.50, subdivision 2, compels Founders to provide basic economic-loss benefits to Yates. But Yates argues that the plain language of subdivision 2 requires Founders to do so, regardless of licensure. Reading subdivision 2 in isolation, this argument has some appeal. A close analysis of section 65B.50 as a whole, and authorities interpreting it shows, however, that subdivision 2 applies only to insurers licensed to write motor-vehicle insurance in Minnesota.

Subdivision 2 states, "every contract of liability insurance for injury, wherever issued, covering obligations arising from ownership, maintenance, or use of a motor vehicle . . . includes basic economic loss benefit coverages and residual liability coverages required by [the no-fault act], while the vehicle is in this state." Minn. Stat. § 65B.50, subd. 2. At first glance, the broad phrasing of subdivision 2 suggests that any motor-vehicle

6

insurance policy issued anywhere by any insurer includes no-fault coverage while the insured vehicle is in Minnesota.[2]

Our supreme court has not addressed the applicability of subdivision 2 to unlicensed, out-of-state insurers such as Founders. In *Petty v. Allstate Ins. Co.*, the supreme court observed that, "[i]n subd. 2, a licensed company agrees to provide basic economic loss coverages, [n]otwithstanding any contrary provision in the original policy so long as the insured vehicle is in Minnesota." 290 N.W.2d 763, 766 (Minn. 1980) (quotations omitted). But the court explicitly declined to rule on the obligations of an insurer that is *not* licensed to do business in Minnesota. *Id*. at 766 n.1 ("We are not confronted with the problem of a nonresident operator of a motor vehicle insured by a company not licensed to do business in Minnesota and do not pass on this issue.").

Three decisions of this court have considered the breadth of subdivision 2 and have arrived at different conclusions; as discussed below, however, only one of these decisions is binding authority. In *Aguilar v. Texas Farmers Insurance Company*, 504 N.W.2d 791, 793 (Minn. App. 1993), our court interpreted subdivision 2 broadly, stating that it "covers all insurers whose insureds are involved in accidents in Minnesota." It noted that

---

[2]   Indeed, a recognized no-fault treatise opines that the legislature intended this interpretation, asserting that "[s]ubdivision 2 is even broader than subd. 1 in that it attempts to provide that every policy of automobile insurance must include minimum liability limits and basic economic loss benefits while the vehicle is in the state, whether or not the insurer is licensed to do business in Minnesota." Theodore J. Smetak, et al., *Minnesota Motor Vehicle Insurance Manual* 71 (3d ed. 2000). It also observes that "[t]he attempt of the Legislature in subd. 2 is to force every out-of-state resident and out-of-state insurer to provide at least the minimum liability coverage for the benefit of anyone injured through use of the insured motor vehicle." *Id.* at 73.

subdivision 2 "requires . . . basic economic loss coverage and residual liability coverage in a policy written by an insurer that is not licensed to do business in Minnesota." *Id.*

This interpretation of subdivision 2 is consistent with no-fault act provisions that express the statute's guiding principles. "If the accident causing injury occurs in this state, every person suffering loss from injury arising out of maintenance or use of a motor vehicle . . . has a right to basic economic loss benefits." Minn. Stat. § 65B.46, subd. 1. It is also consistent with the stated purposes of the no-fault act, which include "to relieve the severe economic distress of uncompensated victims of automobile accidents within this state," and "to encourage appropriate medical and rehabilitation treatment of the automobile accident victim" by ensuring "prompt payment" of benefits for basic economic loss. Minn. Stat. § 65B.42 (1), (3).

Although the reasoning of *Aguilar* is sound, its interpretation of subdivision 2 is not binding because it exceeded the holding of the case. In *Aguilar*, we were asked to resolve an out-of-state insurer's obligations under the no-fault act regarding "add on" underinsured-motorist benefits, not basic economic-loss benefits or residual-liability coverages. *Aguilar*, 504 N.W.2d at 793. Because subdivision 2 does not apply to underinsured-motorist coverage, we concluded that the claimant was not entitled to the benefits he sought. *Id.* at 794. We were not asked to resolve the issue presented here: whether an insurer that is not licensed to write motor-vehicle coverage in Minnesota is obligated to provide economic-loss benefits to an insured injured in Minnesota. Accordingly, our interpretation of subdivision 2 in *Aguilar* is nonbinding dicta. "Regardless of the wording in a judicial opinion . . . a court's expressions that go beyond

8

the facts before the court are dicta and are . . . not binding in subsequent cases." *Dahlin v. Kroening*, 784 N.W.2d 406, 410 (Minn. App. 2010) (quotation omitted), *aff'd*, 796 N.W.2d 503 (Minn. 2011).

After *Aguilar,* and contrary to its discussion of the breadth of subdivision 2, we observed—again in dicta—that insurers that are not licensed in Minnesota are *not* bound by the requirements of subdivision 2. *State Farm Mut. Auto Ins. Co. v. Tenn. Farmers Mut. Ins. Co.*, 645 N.W.2d 169, 175 n.2 (Minn. App. 2002) (noting that a Tennessee insurer that is not licensed to do business in Minnesota is not bound by the requirements of Minnesota Statutes section 65B.50 when its insured's vehicle is involved in an accident in Minnesota and holding that the policy itself did not require the insurer to provide no-fault benefits), *review denied* (Minn. Aug. 20, 2002).

One other case interpreted subdivision 2, and, after careful review of the relevant cases, we conclude that this case is controlling. *See Burgie v. League Gen. Ins. Co.* 355 N.W.2d 466 (Minn. App. 1984), *review denied* (Minn. Feb. 16, 1985). The holding of *Burgie* relates to uninsured-motorist coverage under the terms of a policy but depends on whether Minnesota Statutes section 65B.50, subdivision 2, applies to insurers that are not licensed to write motor-vehicle insurance in Minnesota. *Id.* at 470. Because the interpretation of subdivision 2 was necessary to *Burgie*'s holding, its interpretation governs here.

In *Burgie*, we held that subdivision 2 applies to the same insurers that are subject to the requirements of subdivision 1. *Id.* We reasoned that subdivisions 1 and 2 "must be read as a whole and not treated independently of each other." *Id.* We concluded that "[t]he

9

two [subdivisions] can be harmonized to apply the limitation to insurers licensed in Minnesota to the entire section." *Id.* Under this construction, insurers that are licensed to write motor-vehicle insurance in this state must confer the full benefits of the no-fault act on Minnesota policyholders but need only provide basic economic-loss and residual-liability coverages for nonresident policyholders when they are injured in an accident in Minnesota. *See* Minn. Stat. § 65B.50.

Reading Minnesota Statutes section 65B.50 as a whole is consistent with general principles of statutory construction and caselaw addressing construction of the no-fault act. *State Farm Mut. Auto. Ins. Co. v. Great W. Cas. Co.*, 623 N.W.2d 894, 897 (Minn. 2001) ("[P]rovisions of the No-Fault Act should not be construed in isolation from related sections of the Act."); *see also Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn. 2000) (construing Minnesota Statutes section 65B.491 (1998), in conjunction with Minnesota Statutes section 65B.49 (1998), to avoid conflicting interpretations).

The *Burgie* interpretation of subdivision 2 is also consistent with the principles underlying policy reformation. An insurer's obligation to reform policies to meet the requirements of the no-fault act "arises from the duties imposed upon it for the privilege of doing business in Minnesota." *Petty*, 290 N.W.2d at 766. Requiring insurers that benefit from writing Minnesota motor-vehicle policies to conform to Minnesota's no-fault act aligns the obligation with the privilege of licensure.

Relying on the supreme court's decision in *Petty*, Yates contends that reading subdivisions 1 and 2 together is improper. We disagree. A careful reading of *Petty* shows

10

that the "two portions of [subdivision 1]," not the two subdivisions of section 65B.50, are to be read independently. *Id.*

Yates also urges us to conclude that, because many cases discussing the reach of the no-fault act simply note that an insurer is "licensed to do business" in Minnesota, licensure to transact any insurance business in the state brings an insurer within the purview of subdivision 2. This argument is not grounded in statutory construction and is unavailing. An equally reasonable inference is that each of the insurers identified as "licensed to do business" in Minnesota was in fact licensed to write motor-vehicle insurance in this state.

In *Petty*, for example, the insurer "acknowledged its obligation" to provide basic economic-loss benefits to its nonresident insured "[i]n accordance with Minn. Stat. § 65B.50, subd. 1." *Id.* at 765. Because subdivision 1 by its express terms applies only to insurers that are licensed to write motor-vehicle insurance in the state, the only logical conclusion is that the insurer was so licensed. In *Western National Mutual Insurance Company v. State Farm Insurance Company*, the syllabus references an "out-of-state insurer, licensed to do business in Minnesota." 374 N.W.2d 441, 442 (Minn. 1985). The facts reveal that the insurer "was licensed to write automobile insurance policies in Minnesota, but did not collect any premiums for no-fault coverage on [its out-of-state insured's] policy." *Id*. In *Reed*, filed the same day as *Western National*, the supreme court recounts its holding in *Western National* as applying to insurers licensed to write motor-vehicle policies in Minnesota. *Reed*, 374 N.W.2d at 438. *Petty*, *Western National*, and *Reed* undermine Yates's contention that our caselaw extends the reach of subdivision 2 to an insurer that is licensed to write any kind or class of insurance in this state.

11

In sum, Minnesota Statutes section 65B.50, subdivision 2, read in isolation, could be interpreted as applying to all insurers regardless of licensure, and the result would be consistent with the purposes of the no-fault act. But we are bound by our decision in *Burgie*, which construed Minnesota Statutes section 65B.50, subdivision 2, to apply to the same insurers that are subject to subdivision 1: insurers that are "licensed to write motor vehicle accident reparation and liability insurance in this state." We presume "the legislature acts with full knowledge" of existing judicial interpretations of statutes, *Rockford Twp. v. City of Rockford*, 608 N.W.2d 903, 908 (Minn. App. 2000), and the legislature has not amended Minnesota Statutes section 65B.50 since this court decided *Burgie*. This interpretation is supported by the language of the statute, principles of statutory construction, and the principles underlying policy reformation. The district court therefore erred in denying the motion to vacate the arbitration award and in confirming the award.

## D E C I S I O N

The arbitrator exceeded his authority in awarding basic economic-loss benefits under Minnesota Statutes section 65B.50 when the insurer is not licensed to write motor-vehicle-accident reparation and liability insurance in this state. The district court's denial of the motion to vacate the arbitrator's decision is, therefore, reversed.

**Reversed.**