STATE OF MINNESOTA

IN SUPREME COURT

A15-1174

| | |
|---|---|
| Court of Appeals | Anderson, J. |
| | Took no part, Chutich, J. |

Founders Insurance Company,

Respondent,

vs.

Filed: December 7, 2016
Office of Appellate Courts

James Yates,

Appellant.

_____

Steven E. Tomsche, Erica A. Weber, Tomsche, Sonnesyn, & Tomsche, P.A., Golden Valley, Minnesota, for respondent.

Gregory J. Johnson, G Johnson Law PLLC, Apple Valley, Minnesota; and

Patrick R. Gillespie, Michael P. Gillespie, Gillespie Law Offices LLP, Rogers, Minnesota, for appellant.

Sharon L. Van Dyck, Van Dyck Law Firm PLLC, Minneapolis, Minnesota, for amicus curiae Minnesota Association for Justice.

Tammy M. Reno, Kelly P. Magnus, Jessica C. Richardson, Stich, Angell, Kreidler, Unke & Scattergood, P.A., Minneapolis, Minnesota, for amicus curiae Minnesota Defense Lawyers Association.

_____

S Y L L A B U S

A motor vehicle insurance carrier that is not licensed to sell insurance in Minnesota

is still obligated under Minn. Stat. § 65B.50, subd. 2 (2014), to pay basic economic loss

1

benefits to the insured when the insured vehicle is in Minnesota and an accident occurs in Minnesota.

Reversed.

O P I N I O N

ANDERSON, Justice.

Appellant James Yates was injured in a car accident in Minnesota and sought basic economic loss benefits under Minnesota's No-Fault Automobile Insurance Act, Minn. Stat. §§ 65B.41-.71 (2014), from respondent Founders Insurance Company, his insurer. Founders argued that the Act does not require it to provide basic economic loss coverage because Founders is an out-of-state insurer that does not write motor vehicle insurance in Minnesota. An arbitrator awarded Yates $19,128 in basic economic loss benefits, and the district court confirmed the arbitration award. The court of appeals reversed. Because we conclude that the plain language of Minn. Stat. § 65B.50, subd. 2, requires Founders to provide no-fault benefits to Yates, we reverse the decision of the court of appeals.

I.

Yates was a resident of Illinois until October 2013, when he signed a one-year lease agreement for a residence in Saint Paul and moved there. While living in Illinois, he purchased a motor vehicle insurance policy from Founders. The insurance policy was written to comply with Illinois law and provided $1,000 for medical payments. Under the Minnesota No-Fault Automobile Insurance Act (No-Fault Act), however, insurance policies must provide at least $20,000 for medical expense loss. Minn. Stat. § 65B.44,

2

subd. 1(a)(1).  The insurance policy that Yates had purchased did not contain a conformity clause, which would have increased coverage as required to comply with applicable law.

On December 14, 2013, Yates was driving in Maplewood in snowy conditions when his vehicle collided with another car that had spun out of control in front of him.  Yates made a claim for basic economic loss medical benefits (no-fault benefits) from Founders for injuries he suffered as a result of this collision.  Founders denied the claim, asserting that the No-Fault Act does not require it to provide benefits to Yates because it is not "licensed to write motor vehicle accident reparation and liability insurance" in Minnesota under Minn. Stat. § 65B.50.

Yates pursued his claim for no-fault benefits under the arbitration process in the No-Fault Act.  Minn. Stat. § 65B.525.  Founders did not participate in the arbitration, except to object to the proceeding, arguing that the No-Fault Act did not require Founders to provide benefits to Yates.  Yates argued that Founders is required to provide no-fault benefits because, under Minn. Stat. § 65B.50, subd. 2, "every contract of liability insurance for injury, wherever issued . . . includes basic economic loss benefit coverages."  The arbitrator awarded Yates $19,128 for chiropractic bills, medical mileage, and interest.

While the arbitration was pending, Founders filed a complaint in Ramsey County District Court, seeking a declaratory judgment that it was not required to provide no-fault benefits to Yates.  After the arbitrator issued its ruling, Founders appealed the arbitration award.  These two cases were later consolidated.

The district court confirmed the arbitration award.  Founders appealed, and the court of appeals reversed the district court.  *Founders Ins. Co. v. Yates*, 876 N.W.2d 344 (Minn.

3

App. 2016). The court of appeals concluded that it was bound by its own precedent, which had interpreted Minn. Stat. § 65B.50, subd. 2, to apply only to licensed insurers. *Founders*, 876 N.W.2d at 347-49. Accordingly, the court held that Founders was not required to provide no-fault benefits to Yates. *Id*. at 350. We granted review to determine whether Minn. Stat. § 65B.50, subd. 2, applies to an out-of-state insurer that is not licensed to write motor vehicle insurance in Minnesota.

## II.

Statutory interpretation is a question of law, which we review de novo. *Christianson v. Henke*, 831 N.W.2d 532, 535 (Minn. 2013). The goal of all statutory interpretation is to "ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2014). "[W]hen interpreting a statute, we read and construe the statute as a whole, giving effect whenever possible to all of its provisions." *Eclipse Architectural Grp., Inc. v. Lam*, 814 N.W.2d 692, 701 (Minn. 2012). When the text of the law is unambiguous, we apply the plain meaning of the statutory language. *Sumner v. Jim Lupient Infiniti*, 865 N.W.2d 706, 708 (Minn. 2015). A statute is ambiguous only when it is reasonably susceptible to more than one interpretation. *Lietz v. N. States Power Co.*, 718 N.W.2d 865, 870 (Minn. 2006).

Here, the relevant statute is Minn. Stat. § 65B.50, subd. 2, which states: "Notwithstanding any contrary provision in it, *every* contract of liability insurance for injury, *wherever issued* . . . includes basic economic loss benefit coverages and residual liability coverages . . . while the vehicle is in this state." (Emphasis added.) The plain language of the statute is clear. By its terms, the statute applies to all contracts of liability

4

insurance for injury, wherever issued, including whether they were issued in Minnesota, Illinois, or some other place.

But Founders argues that we should reject this interpretation of the statute because it would make Minn. Stat. § 65B.50, subd. 1, unnecessary. Subdivision 1 states:

> Every insurer licensed to write motor vehicle accident reparation and liability insurance in this state shall, on or before January 1, 1975, or as a condition to such licensing, file with the commissioner and thereafter maintain a written certification that it will afford at least the minimum security provided by section 65B.49 to all policyholders, except that in the case of nonresident policyholders it need only certify that security is provided with respect to accidents occurring in this state.

Founders maintains that the coverage requirements that apply to insurers "licensed to write motor vehicle accident reparation and liability insurance in this state" in subdivision 1 would "become completely unnecessary" if the coverage requirements in subdivision 2 apply to nonlicensed, out-of-state insurers. Consequently, Founders argues that we should read subdivision 1 and subdivision 2 together. Because subdivision 1 is limited to licensed insurers, Founders argues that subdivision 2 is also limited to licensed insurers. We disagree.

Subdivision 1 imposes additional requirements on licensed insurers that subdivision 2 does not impose on nonlicensed insurers. Specifically, subdivision 1 requires licensed insurers to "file with the commissioner and thereafter maintain a written certification that [they] will afford at least the minimum security provided by section 65B.49." Minn. Stat. § 65B.50, subd.1. Section 65B.49 describes in detail the minimum security required, which includes basic economic loss coverage, residual liability coverage, uninsured and underinsured motorist coverages, and rental vehicle coverage. Minn. Stat. § 65B.49.

5

Minnesota Statutes § 65B.50, subd. 2, imposes fewer requirements, requiring nonlicensed insurers to provide only "basic economic loss benefit coverages and residual liability coverages." Therefore, applying subdivision 2 to nonlicensed, out-of-state insurers does not make subdivision 1 unnecessary.

Founders also argues that applying Minn. Stat. § 65B.50, subd. 2, to nonlicensed, out-of-state insurers would "void[] directives which limit the types of insurance for which an insurance company can conduct business in Minnesota." Amicus Minnesota Defense Lawyers Association similarly argues that this interpretation would "eviscerate[] insurer licensing requirements" and "render the licensing statutes meaningless." Again, we disagree.

Multiple statutory rights and obligations accrue to licensed insurers that do not apply to nonlicensed insurers. For example, licensed insurers have the right to sell and advertise their insurance products in Minnesota; nonlicensed insurers do not. Minn. Stat. §§ 60A.07, subd. 4, 72A.33-72A.35 (2014). Licensed insurers also have an obligation to file numerous documents, maintain specified records, and respond to inquiries. *See, e.g.*, Minn. Stat. § 60A.13 (2014) (requiring annual statements and imposing a duty to respond to inquiries from the Commissioner of Commerce); Minn. Stat.§ 60A.27 (2014) (requiring a licensed insurer to notify the Commissioner of Commerce when the insurer is disciplined by another state); Minn. Stat. § 60A.91 (2014) (requiring the filing of certain documents with the National Association of Insurance Commissioners); Minn. Stat. § 70A.06 (2014) (requiring the filing of rate changes); Minn. Stat. § 72A.2035 (2014) (requiring the

6

maintenance of certain records). Minnesota Statutes § 65B.50, subd. 2, imposes none of these obligations on nonlicensed insurers.

Having rejected the arguments of Founders, we are left with the plain language of subdivision 2. It clearly states that it applies to "*every* contract of liability insurance for injury, *wherever* issued." Minn. Stat. § 65B.50, subd. 2 (emphasis added). Nothing in subdivision 2 suggests that it is limited to insurers licensed in Minnesota. Because there is no other reasonable interpretation of the statute, it is unambiguous and we must apply its plain meaning. We therefore conclude that Minn. Stat. § 65B.50, subd. 2, applies to an out-of-state insurer when its insured is in an accident in Minnesota and the insured vehicle is in Minnesota, even though the insurer is not licensed by the State of Minnesota to issue motor vehicle insurance.[1]

Reversed.

CHUTICH, J., took no part in the consideration or decision of this case.

---

[1] We recognize that applying Minn. Stat. § 65B.50, subd. 2, to nonlicensed, out-of-state insurers could present one or more constitutional issues in an appropriate case. The issue of the constitutionality of Minn. Stat. § 65B.50, subd. 2, is not before us; Founders has not raised a constitutional challenge. We therefore express no opinion on the constitutionality of Minn. Stat. § 65B.50, subd. 2. *See State v. Schweppe*, 306 Minn. 395, 401 n.3, 237 N.W.2d 609, 614 n.3 (1975) (declining to decide an issue not briefed or argued by the parties).